GERTRUDE TATELMAN, Plaintiff-Appellant, *v.* BRENDA TATELMAN, Defendant-Appellee.—(INSURANCE COMPANY OF NORTH AMERICA *et al.*, Defendants.)

(No. 60087;

First District (4th Division)—January 22, 1975.

*Rehearing denied February 13, 1975.*

Frankenstein, Lewis & Feierberg, of Chicago (A. S. Frankenstein, of counsel), for appellant.

Sheldon A. Harris and Adolph L. Haas, both of Chicago (Adolph L. Haas and Gary E. Dienstag, of counsel,) for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

This appeal evolves from an action brought by the plaintiff, Gertrude Tatelman, mother of Irwin Tatelman, deceased, to enjoin payment of the proceeds of certain life insurance policies issued on Irwin Tatelman's life to the defendant, Brenda Tatelman, the designated beneficiary. The plaintiff alleged that she was entitled to the proceeds rather than the defendant, Brenda Tatelman, the deceased's wife. The latter filed a verified motion for summary judgment alleging that there existed no genuine issue as to any material fact and that the plaintiff's amended complaint failed to state a cause of action. The Chancery Division of the Circuit Court, which had before it all of the pleadings and a discovery deposition of the plaintiff taken by the defendant, granted the motion of defendant, Brenda Tatelman, and ordered the insurance companies to pay the proceeds of the policies to her.

The record reveals that the defendant insurance companies deposited all monies due under the respective policies with the clerk of the court, and they are not parties to this appeal.

The record further reveals the following facts: The deceased, Irwin Tatelman, and the defendant, Brenda Tatelman, were married on March 31, 1968. They were living separate and apart since September 17, 1972. On March 23, 1973, they entered into a written property settlement agreement in contemplation of a divorce, a copy of which was attached to the amended complaint. The defendant, Brenda Tatelman, had previously been named by her husband, Irwin, as the sole beneficiary of the insurance policies in question. No mention of the policies was made in the property settlement agreement.

The plaintiff's complaint alleged that Irwin and Brenda were hope-

lessly estranged. Brenda was insistent upon obtaining a divorce. Irwin on many occasions attempted to obtain a reconciliation, but was spurned by her. Brenda no longer "had a place in his affections and because of the intense hatred and lack of love and affection Brenda had for Irwin, it was no longer Irwin's intention * * * to continue to name Brenda as his beneficiary under the said policies of insurance," and Irwin's true intent was to change the name of the beneficiary to his mother, the plaintiff, Gertrude Tatelman. On or about April 1, 1973, Irwin went to Centralia, Illinois, to assist his father in the operation of a country club and while there was killed in an automobile accident on April 6, 1973.

In a discovery deposition, the plaintiff testified that on about March 28, 1973, her son was at her home for dinner. He told her "that he was going to transfer his insurance making me beneficiary when he came back from Centralia," and that "he was going to transfer his insurance as soon as he came back." The plaintiff's sister, Mildred Goodman, was present during this conversation. When the plaintiff was asked what else Irwin said with reference to the insurance, she replied, "Nothing else." She said he talked about his coming divorce and said he was going to take care of everything when he got back. She did not remember discussing his insurance with him at any other time. He had discussed the matter of a divorce a number of times with her. He had told her that he was angry with his wife because she was having an affair with another man and she told him about it. He told her "he hated [his wife's] guts."

The plaintiff strenuously argues, based on the above facts, that it was the intention of Irwin Tatelman to change the beneficiary of his insurance from his wife to her, but that he was prevented from complying with the terms of the policies by his untimely death. It is her position that in order to do justice and to respect the wishes of a deceased person, a court of equity will intervene to carry out the clear and evident intention of a person under such circumstances.

■■ The law is clear, however, that some positive action must be taken by the insured to comply with the terms of the policy in regard to changing beneficiaries to warrant the intervention of a court of equity. Substantial compliance with the terms of the policy has been deemed essential. (See *Freund v. Freund*, 218 Ill. 189, 75 N.E. 925; *Begley v. Miller*, 137 Ill.App. 278.) An oral declaration that a beneficiary has been changed or will be changed is not sufficient to effect the change. *Williams v. Teachers Insurance & Annuity Association*, 15 Ill.App.3d 542, 304 N.E.2d 656.

■■ These principles are recognized by various other authorities. In 2 Appleman, Insurance Law and Practice § 963, at 591-93 (1966), it is stated:

"Where the insured takes a positive action which evidences his obvious desire for a change of beneficiary, the courts will take such a construction as will assist in carrying out such intention. * * * It is ordinarily necessary, however, that affirmative action be taken by the policyholder to effectuate his intention—the intention alone, however definite, being insufficient. *Oral statements of the insured's intention are insufficient to accomplish this result * * *.*" (Emphasis added.)

And in § 985, at 620, it is stated:

"Where the insured has made no effort to comply with the policy terms * * * and *has merely expressed an intention or desire as to who shall receive the fund,* equity will not intervene. This may arise where the insured waits until shortly before his death before attempting to comply with the policy requirements, and then fails to do substantial acts in accordance therewith." (Emphasis added.)

In 5 Couch on Insurance 2d § 28:75, at 179-81 (1960), it is also stated:

"The mere fact that the insured takes preliminary steps with the intent of ultimately effecting a change of beneficiary does not in itself constitute substantial compliance and a change of beneficiary does not result therefrom.

On the other hand there is of course no basis for the application of the substantial compliance doctrine where the circumstances are such that there is no clear expression by the insured of an intent to change the beneficiary and name a third person as the substituted beneficiary. *Where all the insured does toward effecting a change of beneficiary consists in a statement or expression of intention to the effect that he desires to change the beneficiary, and he does not take any positive formal steps to accomplish such change, no change of beneficiary takes place,* nor is the insured regarded as declaring himself to be a trustee of the insurance policy for the benefit of the intended beneficiary. Mere declarations of the insured member that he was changing the beneficiary to a designated person or had already done so is not sufficient to effect or establish a change of beneficiary where the procedure for changing the beneficiary had not been satisfied." (Emphasis added.)

In the instant case there is no claim by the plaintiff that the deceased made or attempted to make any effort to comply with the policy requirements or that he contacted the companies for the purpose of changing beneficiaries. In *Seipel v. State Employees' Retirement System,* 8 Ill.App. 3d 182, 289 N.E.2d 288, for example, the deceased executed a beneficiary

form for death benefits under a retirement plan designating his mother as beneficiary, but his mother signed the form in the wrong place. The deceased was informed of the mistake, and a new form was mailed to him. After his death, the form was found in his desk, again designating his mother as beneficiary. It was signed, but not notarized. Even under these facts, the court upheld the decision of the circuit court, affirming the finding of the retirement system, that deceased did not act sufficiently to effectively designate his mother as beneficiary. The court stated that "[i]n Illinois, in life insurance contract beneficiary cases, the court has held that a substantial compliance with the policy requirements must have been followed" (citing *Begley v. Miller*, 137 Ill.App. 278, *Freund v. Freund*, 218 Ill. 189, 75 N.E. 925, and Joyce on Insurance, at 203). (8 Ill.App.3d 182 184-85, 289 N.E.2d 288, 290.) Applying that principle to the facts, the court found the decision of the administrative body not to be against the manifest weight of the evidence. In the case at bar, clearly much less was done by the deceased—in fact, no positive action whatsoever.

The authority cited by the plaintiff itself emphasizes the need for some positive action to effectively accomplish a change of beneficiary. In *John Hancock Mutual Life Insurance Co. v. Douglass* (7th Cir. 1946), 156 F.2d 367, the insured executed a change of beneficiary form, but it was signed incorrectly, had no witness to the signature, and did not identify the new beneficiary (the insured's new wife) by name. Six days later, before the insured could execute the form properly, he developed pneumonia and died. The court reversed the trial court's finding that no change in beneficiary had been effected. It was pointed out that the request for change was made by the insured on the blank of the insurer, furnished by one of its agents and tendered, together with the policy, to another of its agents for whatever action was necessary on the part of the insurer; it identified the policy by number, and the proposed new beneficiary at least by class and address; and it revoked all prior designations. Again, this case is not remotely similar to the case at bar, where no positive action was undertaken by the insured.

The plaintiff strongly urges that the separation agreement proves that the deceased did not intend to leave his wife anything and that it buttresses the contention that he intended to give the benefits of the policies to his mother. The record clearly shows that the agreement was made in contemplation of a divorce and that no divorce proceedings had as yet been filed. And, as in *Equitable Life Assurance Society v. Stilley*, 271 Ill.App. 283, the separation agreement does not mention the policies. There it was held that the wife remained beneficiary under a policy of insurance on her husband's life where, although she had entered into

a separation agreement with her husband relinquishing various property rights, the insurance policy was not referred to expressly or impliedly therein.

Likewise, in *O'Toole v. Central Laborers' Pension & Welfare Funds*, 12 Ill.App.3d 995, 299 N.E.2d 392, a property settlement agreement had been entered into by the husband and wife, but there it had been incorporated in the divorce decree. It also contained a general clause stating that "each party is further barred as to any and all claims or interests whatsoever in and to the property of the other now owned and hereafter acquired." Subsequent to the divorce no change was made in the designation of the wife as beneficiary of certain insurance policies and death benefits payable on the husband's death. The husband died and left his mother as his only heir at law. The appellate court affirmed the judgment of the circuit court that the wife was entitled to the benefits of the policies. It held that when an insured reserves a right to change a beneficiary, the beneficiary has a mere expectancy during the insured's lifetime, and this expectancy would not be considered property and would not be included in a property settlement agreement unless specifically included or so intended by the language of the agreement. There also the property agreement was general and there was no specific provision regarding insurance. The court stated that Illinois follows the majority rule that a decree of divorce in no way affects the rights of the divorced wife as a beneficiary in a husband's life insurance policy. "Only if a property settlement agreement should specifically include a termination of the beneficiary's interest, will the right to the proceeds of a policy on the life of the husband be affected, unless the policy itself or a statute provides otherwise." (12 Ill.App.3d 995, 997, 299 N.E.2d 392, 394.) The court further noted that "[s]urely, if the insured had wished to substitute another person or his estate as beneficiary following the divorce, he would have at least attempted to effect a change with the insurer or included a provision in the property settlement agreement indicating such intention." 12 Ill.App.3d 995, 998, 299 N.E.2d 392, 394.

Again, the authority cited by the plaintiff in no way supports her position. In *Thomas v. Johnson*, 12 Ill.App.3d 302, 297 N.E.2d 712, the sole issue was whether the severance of a joint tenancy was effected by the provisions of a divorce decree. There the divorce decree incorporated a property settlement agreement which specifically provided " '* * * that all real estate * * * shall be sold and the net proceeds thereof, divided, equally, between the parties hereto.' " (12 Ill.App.3d 302, 304.) The court concluded from that language and the relevant circumstances disclosed in the transcript of the divorce hearing that the parties intended a division of the property and that the agreement contemplated

a sale as soon as feasible. The decree unconditionally ordered the sale to take place and the proceeds to be divided equally. The performance of the agreement to sever the joint tenancy prior to the husband's death was held to be unnecessary to effect the severance, and the husband's devisee was entitled to his interest in the property rather than his former wife as surviving joint tenant.

■■■ Under the heading of "Summary judgments and decrees," section 57 of the Civil Practice Act provides, in subsection (3) (Ill. Rev. Stat. 1971, ch. 110, par. 57(3)):

> "Procedure.   *   *   *   The judgment or decree sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law.   *   *   *"

The use of summary judgment is to be encouraged in a proper case (*Allen v. Meyer*, 14 Ill.2d 284, 152 N.E.2d 576), and this is clearly such a case. Based on the record before us, it is evident that there exists no genuine issue as to any material fact, and based on the above discussion, it is emphatically clear that the defendant, Brenda Tatelman, was entitled to judgment as a matter of law. We therefore affirm the judgment of the circuit court.

Affirmed.

ADESKO and JOHNSON, JJ., concur.