REGINA R. LOGAN, Plaintiff and Counterdefendant-Appellant, *v.* STATE FARM LIFE INSURANCE COMPANY, Defendant and Counterplaintiff-Appellee.—(BARBARA A. PRIDE, Interpleaded Counterdefendant-Appellee.)

Third District   No. 77-392

Opinion filed July 11, 1978.

V. James Cerri, of Cirricione, Block & Krockey, P. C., of Joliet, for appellant.

Joseph B. Taylor, of Smith, Smith & Taylor, of Clinton, for appellees.

Mr. PRESIDING JUSTICE BARRY delivered the opinion of the court:
This appeal was brought by the plaintiff, Regina R. Logan, from a judgment of the Circuit Court of Will County dismissing the complaint

and granting judgment to Barbara A. Pride (a/k/a Barbara Trail) on the interpleader action pleaded in the counterclaim of the original defendant, State Farm Life Insurance Company. Both Logan and Pride, hereinafter referred to as the defendant, were named defendants to the counterclaim since they each claim to be beneficiaries of the insurance policy issued by State Farm to Michael Wayne Pride, now deceased.

Approximately 2½ years prior to his death, Michael applied for a life insurance policy through Robert W. Peavler, a direct writer for State Farm. The policy was issued on March 1, 1972. The beneficiaries at that time were listed: Barbara A. Pride, wife, primarily, then Ame B. Trail, stepdaughter and children of this marriage equally; then Regina R. Logan, sister, and Larry E. Logan, brother-in-law, equally. This policy also included a spouse's renewable term rider and a children's term rider insuring the lives of Barbara A. Pride and Ame B. Trail as Michael's wife and stepdaughter, respectively.

Subsequently, Peavler discovered that the defendant was not married to Michael and relayed this information to State Farm, which requested that Peavler have the insured remove the defendant and her daughter from the policy's term riders. When the insurance agent met with the insured for that purpose, Michael orally requested that the beneficiaries be changed to Regina Logan, sister, as primary beneficiary, Kenneth Pride, brother, as successor beneficiary and then his mother, Lela Pride.

Having no change of beneficiary forms with him, the agent returned to his office, typed the request forms to cancel the term riders and to change the beneficiaries, signed the unsigned form as a witness to the anticipated signature and mailed the request forms to the insured to be signed. The insured, however, never signed the forms. Instead, the plaintiff, with whom the insured was residing, signed Michael's name to the form and hand delivered it, along with the insurance policy, to the agent's office. In turn, Peavler forwarded these documents to the offices of State Farm. State Farm recorded the change of beneficiaries and returned the policy, along with the cancellation of the spouse's renewable and children's term riders. The policy reflected the change in beneficiaries.

Peavler personally delivered these documents to the insured. In so doing, the agent informed the insured that the policy contained the changes he, the insured, requested. Though accepting the returned policy, the insured made no response to the agent's statement.

From 1969 to his death, Michael had resided with the plaintiff and her husband on several occasions. During these occasions, plaintiff laundered his clothes, prepared his meals, cashed his checks, paid his bills and co-signed a loan for him. A clerk at the local grocery store testified that the plaintiff had written authority from Michael to cash his checks. However, the plaintiff admitted she had no written authority to execute her brother's signature on the change of beneficiary form.

According to the plaintiff's testimony, which testimony is unconfirmed, she executed her brother's signature pursuant to his oral request. That request was made when Michael, though able to sign his name, was busy getting dressed for work.

■■ As a general rule, when a policy prescribes a method for changing beneficiaries, that method is exclusive and a change by any other means is ineffectual. (*Williams v. Teachers Insurance & Annuity Association* (1st Dist. 1973), 15 Ill. App. 3d 542, 304 N.E.2d 656.) However, when an insured has done everything in his power to effectuate a change of beneficiary, equity will not require an exact compliance with the conditions stated in the policy. *Donahey v. Sweigart* (4th Dist. 1949), 336 Ill. App. 366, 84 N.E.2d 170.

The plaintiff cites to us a number of cases which stand for the proposition that if the insured made a proper application for change of beneficiary before his death, the failure of the insurance company to endorse the change on the policy before the death will not defeat the change. (*Continental Assurance Co. v. Platke* (7th Cir. 1961), 295 F. 2d 571; *Prudential Insurance Co. of America v. Moore* (7th Cir. 1944), 145 F. 2d 580; *Thompson v. Metropolitan Life Insurance Co.* (2d Dist. 1943), 318 Ill. App. 235, 47 N.E.2d 879; *Sun Life Assurance Co. of Canada v. Williams* (1st Dist. 1936), 284 Ill. App. 222, 1 N.E.2d 247.) Though this may well be the law, it has no bearing on the fact situation presented in this appeal.

■■■ The issue here is whether the plaintiff's signing of the insured's name on the change of beneficiary form was effective as the signature of the defendant. An illiterate insured may effect a change of beneficiary by having a disinterested person sign the insured's name in the presence of the insured and at the insured's direction. (*Longer v. Carter* (1912), 102 Ark. 72, 143 S.W. 575.) Even though the signature was not originally authorized the insured may adopt it as his own by adopting it in some fashion. See *Miller v. Swanson* (3d Dist. 1965), 66 Ill. App. 2d 179, 213 N.E.2d 294.

It is argued by the plaintiff that she was properly authorized to make the signature. But by the plaintiff's own testimony, she signed the form outside of the presence of the insured. Michael was not illiterate, and although he had provided written authority to plaintiff to cash his checks, she testified he merely requested that she sign the form for him while he was getting ready for work.

■■ The credibility of witnesses in a bench trial is a matter within the province of the trial court, and unless the finding of the trial court is against the manifest weight of the evidence. that finding will not be disturbed by the reviewing court. (*Smith v. Realcoa Construction Co.* (1st Dist. 1973), 13 Ill. App. 3d 254, 300 N.E.2d 855.) Only the self-serving

testimony of the plaintiff indicates that the insured authorized her to sign the change of beneficiary form. Certainly the trial court is not required to believe such a deeply interested witness.

However, the plaintiff contends that her story is substantiated by the fact that Michael had orally requested the change of beneficiary earlier. Certainly, an oral expression of an intent to change beneficiaries is generally insufficient to effectuate a change. (*Tatelman v. Tatelman* (1st Dist. 1975), 25 Ill. App. 3d 678, 323 N.E.2d 821.) Moreover, from the time the insured expressed his intent to change beneficiaries and the agent mailed the form to the insured, he could have decided not to change beneficiaries. Therefore, the testimony of the interested plaintiff alone, without some evidence that the insured later adopted the signature as his own, does not prove that Michael Pride did everything in his power to effectuate a change of beneficiary.

■■ Lastly, the plaintiff argues that the insured did adopt the signature. The adoption, according to the plaintiff, occurred when Peavler returned the policy to the insured, stating that the requested changes had been made, and Michael, without saying a word, accepted the policy and never again attempted to change the beneficiaries. This argument might be persuasive if the change in beneficiaries was the only change made. According to Peavler's testimony, he did not specify, in his statement to the insured, to which changes he was referring when he returned the changed policy. It is possible that the insured understood the agent to mean that only the term riders were cancelled. In fact, because of the insured's silence, we are unable to determine what the insured understood the action of the agent to be. As a result, we can not conclude that the finding of the trial court was against the manifest weight of the evidence.

Accordingly, the judgment of the Circuit Court of Will County is affirmed.

Affirmed.

ALLOY and STOUDER, JJ., concur.