VIRGINIA ANN DOOLEY, Plaintiff-Appellee, *v.* JAMES A. DOOLEY ASSOCIATES EMPLOYEES RETIREMENT PLAN *et al.*, Defendants-Appellants.

First District (5th Division) No. 80-1642

Opinion filed September 11, 1981.

Myron M. Cherry and Peter Flynn, both of Cherry & Flynn, and William J. Harte, of William J. Harte, Ltd., both of Chicago, for appellants Mary Connelly, Michael Connelly, John D. Connelly, and Lorraine J. Grau.

Clare J. Murphy and Sidney Z. Karasik, both of Chicago, for appellant Herbert Jackson.

Barnabas F. Sears and Wayland B. Cedarquist, both of Chicago (Boodell, Sears, Sugrue, Giambalvo & Crowley, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, decedent's daughter, sought declaratory and injunctive relief to declare an alleged 1978 beneficiary designation of decedent's interest under a private retirement plan invalid and legally ineffective to revoke decedent's prior beneficiary designation of plaintiff. At a bench trial the court found for plaintiff. Mary Connelly, Michael Connelly, John D. Connelly, Lorraine Grau, and Herbert Jackson, as special administrator of the estate of Hope Jackson, deceased (collectively referred to herein as defendants), all claimants under the alleged 1978 designation, appeal. The James A. Dooley Associates Employees Retirement Plan and Joseph Reynolds, and Virginia P. Dooley, as trustees of the James A. Dooley Associates Employees Retirement Trust, also named as defendants in the trial court, do not appeal.

The issue raised on appeal is whether the trial court's finding that decedent did not effect a beneficiary change in 1978 was against the manifest weight of the evidence.

In 1962, the late James A. Dooley organized his law firm into a professional association, James A. Dooley Associates (JADA). He was assisted by Joseph Reynolds of St. Louis, a CPA and close personal friend. Reynolds counselled decedent with regard to JADA's organization. Additionally, at decedent's request, Reynolds designed the original 1962 JADA retirement plan, known as James A. Dooley Associates Employees Retirement Plan and the James A. Dooley Associates Employees Retirement Trust. The original retirement plan was adopted in August 1963, effective retroactively to October 1, 1962. JADA paid money into the fund each year on behalf of its participants. Each participant's account was separately maintained. The retirement plan provided that each participant could retire at age 65 and receive benefits. If the participant died, his interest in the fund would go to either a beneficiary of his designation or, if no beneficiary was designated, to the participant's spouse, if living, or to the participant's estate.

In 1973, decedent made a beneficiary designation of his interest under the JADA Retirement Plan. Decedent's 1973 designation named plaintiff, his only child, the beneficiary of his interest in the JADA trust, revoked any prior designation, but did not name a contingent or successive beneficiary nor make any provision for the timing of payments. There were two slightly different versions of this 1973 designation. One was handwritten and the other was typewritten and both bore decedent's signature. The authenticity and validity of these designations, however, are not disputed.

In 1976, upon becoming a supreme court justice, decedent moved his office files and his secretary to a small space in the offices of another attorney located at 111 West Washington Street for the purpose of winding up JADA affairs. A locked steel cabinet was also maintained in this office.

In April 1977, decedent requested that Reynolds meet with him regarding a number of matters. Reynolds, who at that time did not know of the 1973 designation, asked decedent if he had done anything with respect to the beneficiary designation of his JADA trust interest. In response, decedent asked for pen and paper and wrote out a distribution of his trust estate to plaintiff and defendants. Decedent changed the amounts of these specific bequests before arriving at a final distribution which he then gave to Reynolds. Reynolds objected because the bequests were made in specific dollar amounts. Decedent charged Reynolds to work on it further and get back to him. Subsequently Reynolds and decedent discussed the matter over several telephone conversations. Decedent told Reynolds to put all of it in writing.

One month after their April 1977 luncheon meeting, Reynolds wrote decedent a four-page letter explaining the various possibilities of this "proposed distribution" and its tax consequences. Page 1 of the letter stated: "Your beneficiary designation would appear along the lines following based on the information you wished included * * *." Page 2 of the letter contained a proposed designation beginning "Upon my demise, any unpaid balance in my account shall be paid as follows:" and embodying the distribution decedent had specified at the luncheon meeting "convert[ing] the dollar amounts * * * into percentages * * *."

Over the ensuing nine months Reynolds frequently spoke with decedent over the telephone and "would always ask him if he were ready to finalize this thing." Reynolds also prepared an amended JADA retirement trust plan which was adopted on September 28, 1977, effective retroactively to October 1, 1976. Under the amended plan decedent and Reynolds were the named trustees. The amended trust plan altered the method by which beneficiaries could be changed. The original plan stated, "The beneficiary * * * may be changed * * * at the election of the Participant, but only by his filing a new designation with the Company and by revoking all prior designations." Under the 1977 amendment,

> "A participant may designate the beneficiary of his choice to receive payments of amounts credited to his Company Contribution Account, his Employee Contribution Account, if any, and his Rollover Account, if any, at his death. The Beneficiary Designation must be in writing and filed with the Company and may include contingent or successive beneficiaries. A Participant's Beneficiary

Designation may be changed at any time or from time to time by the Participant's filing a new Beneficiary Designation form with the Company. The revocation of a beneficiary's designation shall not require the consent of any beneficiary."

The amended plan does not explain what "filed with the Company" means, nor did anyone testifying have any knowledge of a specific "Beneficiary Designation form" which was to be used in making or altering the designation.

Approximately five months after the 1977 Trust Amendment and nine months after Reynolds' letter to decedent proposing a percentage beneficiary distribution, decedent and Reynolds met on February 21, 1978, at decedent's request to discuss a number of tax matters. During lunch decedent mentioned to Reynolds that he would like to do something for his sister and for charity, and that he felt that he should leave his nephews something. John Adams, decedent's accountant, was waiting for the two men upon their return from lunch. In the presence of Adams and Reynolds, decedent on his own initiative brought out Reynolds' May 1977 letter from his desk, studied it for a minute, turned to page 2 which contained the proposed percentage beneficiary distributions, and wrote in several changes. When finished he gave the letter to Reynolds. Reynolds read the notations, got up, went around the desk where decedent was sitting, and asked decedent several clarifying questions regarding the percentage to be distributed to plaintiff and whether certain payments were to be paid quarterly, monthly or annually. Finally, Reynolds noted at the bottom of page 2, "PER J.A.D. instructions on 2/21/78. JHR."

At trial Adams, who was present during the course of these events, stated that he saw decedent make the notations, identified the handwriting on the letter as decedent's, and witnessed the discussion of the changes between Reynolds and decedent. Adams also testified that he heard decedent say he wanted 10 percent to go to each of his nephews, eight percent to his sister and five percent each to Lorraine Grau and Hope Jackson. Adams stated that there was no doubt in his mind that decedent had so stated to Reynolds in Adams' presence. He also testified that decedent handed the document back to Reynolds and asked him to have it typed. Adams left the meeting some time before it ended.

Reynolds also testified to this meeting. The only discrepancy between his testimony and that of Adams was that Reynolds stated he offered to take the alleged designation back to the office and "put it in formal style for [decedent] to prepare it for his signature * * *" to which decedent responded that there wasn't any particular hurry because he was more interested in the other matters central to Reynolds' visit than he was

in "finishing this up." Reynolds took the letter along with other papers back to St. Louis. (It is this letter which defendants contend to be decedent's 1978 beneficiary designation change.)

John Cusack, the then president of JADA, an attorney and close intimate of decedent, testified that on the following day, February 22, 1978, pursuant to decedent's request, he met with decedent in his chambers. Decedent handed a copy of the letter to him and discussed it with Cusack in the latter's capacity as president of JADA. Decedent stated, "Jack, I have made changes in the beneficiary provision of the retirement plan, and these are the changes that I have made." Cusack read the document and asked if the information or a copy of the document had been given to Reynolds to which decedent affirmatively responded. Cusack then stated to decedent "that as far as I am concerned, as president of the company, this is a proper designation" and further suggested that decedent keep the document among the other JADA records that were in his possession.

Shortly thereafter, on March 5, 1978, decedent died. Following his death Reynolds looked through the beneficiary file folder kept in the locked steel cabinet in decedent's Washington Street office. On the file folder was handprinted: "DOOLEY ASSOC. RETIREMENT TRUST (Beneficiary slips)." The file folder contained more than 70 documents, consisting of the beneficiary designations of those who had been employed by JADA. While perusing this file Reynolds discovered the handwritten and typed versions of decedent's 1973 designation of plaintiff as his sole beneficiary of his interest in the JADA retirement trust. Although Reynolds had known of the existence of this file he had not known of the existence of this 1973 beneficiary designation.

Reynolds also testified that he met with Cusack on two occasions subsequent to decedent's death. The first meeting was for lunch on the day of decedent's funeral. The second meeting, at which defendants Michael Connelly, John D. Connelly and Lorraine Grau as well as Reynolds were in attendance, occurred two months later at Cusack's office. Reynolds testified that Cusak said nothing to him on either occasion about his February 22, 1977, meeting with decedent.

On June 30, 1978, James Proesel, as guardian of the estate of Virginia Ann Dooley, filed the complaint in this cause. Upon reaching her majority, Virginia Ann Dooley was substituted as plaintiff. The court rendered an oral finding in favor of plaintiff on May 30, 1980, and entered judgment on June 3, 1980. The judgment found and declared, in pertinent part, that the typed designation dated December 13, 1973, signed by decedent, naming plaintiff, Virginia Ann Dooley, his daughter, as his beneficiary, was valid and effective; and further that the letter dated May

27, 1977, with decedent's handwritten notes thereon was not a valid change of beneficiary by decedent and did not revoke the prior designation. This appeal followed.

OPINION

■■ Plaintiff and defendants readily concede that although this case involves the efficacy of a beneficiary designation under a retirement plan, the principles derived from life insurance beneficiary cases apply. *Seipel v. State Employees' Retirement System* (1972), 8 Ill. App. 3d 182, 289 N.E.2d 288.

Generally when a policy of insurance states the method by which a change of beneficiary may be made, that method is exclusive (*Logan v. State Farm Life Insurance Co.* (1978), 61 Ill. App. 3d 770, 378 N.E.2d 395) and substantial compliance with it is required to effect a valid change. *Tatelman v. Tatelman* (1975), 25 Ill. App. 3d 678, 323 N.E.2d 821; *Begley v. Miller* (1907), 137 Ill. App. 278.

Therefore, whether or not decedent effectively changed his beneficiary designation in 1978, as defendants contend, can be resolved by determining whether decedent substantially complied with the stated requirements of the JADA Retirement Plan.

There is no dispute that the applicable JADA Retirement Plan set forth two requirements to effect a beneficiary designation change: the change had to be in writing, and it had to be filed with the company.

■■ Defendants first assert that the alleged 1978 designation was sufficient to comply with the Plan's first requirement that the beneficiary designation be in writing. That the typewritten page 2 of the alleged designation was unsigned by decedent and contained interlineations in his own handwriting poses no problem as there is no specific requirement in the Plan that the designation be signed, handwritten or typed. Furthermore, there is no dispute as to the authenticity of the handwritten interlineations on page 2 of the letter. Accordingly, under a different factual setting the alleged 1978 designation, bearing decedent's handwriting and indicating proposed beneficiaries and the amounts they were to receive, could constitute a writing within the context of the JADA Retirement Plan. (See *Cox v. Employers Life Insurance Co.* (1975), 25 Ill. App. 3d 12, 322 N.E.2d 555.) However, in the instant case the evidence before the trial court was sufficient to indicate that the alleged 1978 designation had not been finalized by the decedent. The contested letter was taken by Reynolds to be retyped by him and returned to decedent. It was never retyped and no further action was ever taken. Thus, the trial court's finding that an effective beneficiary designation had not been made in writing is not against the manifest weight of the evidence.

Even assuming *arguendo* that the instrument was a sufficient writing

as required under the Plan, the second requirement to effect a change, that it be filed with the company, has not been met.

Defendants contend that the 1978 beneficiary designation was "filed" by decedent as required by the Plan when decedent either gave the letter to Reynolds or when he later handed a copy of it to Cusack. With this contention we disagree.

Although the JADA Retirement Plan does not define the term "filed with the company," other resources are helpful in this regard. The word "file" has been defined as meaning "to deliver * * * after complying with any condition precedent (as the payment of a fee) to the proper officer for keeping * * * among the records of his office * * * esp[ecially] by formally receiving, endorsing, and entering" (Webster's Third New International Dictionary at 849 (1966)). Those cases which have considered the actions necessary to constitute a proper filing of public documents are also instructive. It has been held that "[a] document is considered filed when it is deposited with and passes into the exclusive control and custody of the clerk, who understandingly receives the same in order that it may become a part of the permanent records of his office." (*Gietl v. Commissioners of Drainage District No. One* (1943), 384 Ill. 499, 501-502, 51 N.E.2d 512-513; *Hamilton v. Beardslee* (1869), 51 Ill. 478.) With these definitions as guides, we consider whether the contested document was "filed" with either Reynolds or Cusack.

Reynolds was a party with whom such a designation could be properly "filed," as the evidence adduced at trial revealed that he and decedent's secretary handled the beneficiary designations made under the JADA Retirement Plan. However, the mere fact that the contested letter came into his possession does not mean it had been "filed" as we have seen that term commonly defined.

■■ The record reveals that Reynolds understood that the contested document was to be returned by him to the decedent for "finishing up." Thus, the evidence clearly shows that it never passed into Reynolds' exclusive custody and control and certainly was not given to him with the understanding that it become part of any permanent record. In a true sense, control and authority over this disputed document was never relinquished by decedent. Thus, Reynolds' naked possession of the document would not constitute a filing as defendants contend.

■■ Defendants further assert, however, that the contested document was also filed when decedent handed it to Cusack, the then president of JADA, who immediately returned it to decedent's possession. However, only Cusack testified to his meeting and conversation with decedent, and the weight to be accorded his testimony is a matter of credibility. The credibility of witnesses in a bench trial is a matter within the province of the trial court which saw and heard them, and its findings will not be

disturbed unless against the manifest weight of the evidence. (*Mortell v. Beckman* (1959), 16 Ill. 2d 209, 157 N.E.2d 63; *Logan v. State Farm Life Insurance Co.* (1978), 61 Ill. App. 3d 770, 378 N.E.2d 395.) In light of Reynolds' testimony in rebuttal to Cusack that the latter never mentioned this meeting and attendant conversation to Reynolds although the two had met on two occasions subsequent to decedent's death, we cannot say that the court erred in finding Cusack's testimony unpersuasive. Neither can we say that the finding that the contested letter was not filed as required by the plan is against the manifest weight of the evidence.

Accordingly, the trial court did not err in concluding that decedent did not effect a beneficiary change in 1978 and that therefore the 1973 beneficiary designation is valid and effective.

For the reasons cited herein, the judgment of the trial court is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.