(No. 40899.—

HERBERT M. STEIN *et al.*, Appellees, *vs.* YARNALL-TODD CHEVROLET, INC., Appellant.

*Opinion filed Sept. 24, 1968.—Rehearing denied Nov. 21, 1968.*

MAYER, FRIEDLICH, SPIESS, TIERNEY, BROWN & PLATT, of Chicago, (DURMONT W. McGRAW and GEORGE W. HAMMAN, of counsel,) for appellant.

CLAUSEN, HIRSH, MILLER & GORMAN, of Chicago,) JACOB T. PINCUS and JAMES T. KERRINI, of counsel,) for appellees.

Mr. JUSTICE WARD delivered the opinion of the court:

A complaint filed in the circuit court of Cook County by the owners of a commercial building, Herbert M. Stein and Phyllis B. Stein, hereafter called the lessors, sought a judgment for $13,000 against the tenant, Yarnall-Todd Chevrolet, Inc., hereafter called the lessee. The complaint described damages to the leased property caused by a fire which, it was alleged, occurred because of the negligent use of an oxyacetylene torch in lessee's automobile repair shop by an employee of the lessee. The trial court dismissed the complaint on the motion of the lessee that under the lease it was relieved from responsibility for damage by fire, though caused by its own negligence. The Appellate Court for the First District reversed the judgment and remanded the cause to the trial court with directions to deny the motion to dismiss and to conduct appropriate further proceedings. (85 Ill. App. 2d 228:) We have granted the lessee leave to appeal from this decision.

The issue presented for resolution is whether the parties to the lease, considering the lease as a whole and in light of

our decision in *Cerny-Pickas & Co.* v. *C. R. Jahn Co.*, 7 Ill.2d 393, manifested an intent to exculpate the lessee from liability in the event of loss by fire through negligence of the lessee.

The lease provided for a term of nine years at an annual rental which would average about $48,500, and, under it, the lessee was to use the premises for the conduct of an automobile and truck sales and service business. Pertinent provisions of the lease are these:

"5. * * * At the termination of this lease by lapse of time or otherwise, lessee shall return the premises and all leasehold improvements and fixtures therein in as good condition as when lessee took possession, ordinary wear and tear or damage by fire or other casualty beyond lessee's control excepted, * * *.

"7. * * * Lessee * * * will not make or permit any use of the premises * * * which may be dangerous to life, limb or property, or which may increase the premium cost of or invalidate any policy of insurance carried on the building or covering its operation or on the demised premises or any part or appurtance thereof. In addition to all other liabilities for breach of any provision of this Section 7, lessee shall pay to lessors an amount equal to the increased cost of any insurance coverage resulting from lessee's act or neglect and all damages sustained by lessors as a consequence thereof. * * *

"8. Lessee shall, during the term, at lessee's own expense, keep the premises in good order, condition and repair, including the replacement of all broken glass with glass of the same size and quality. Lessee shall maintain and deposit with lessors policy or policies or certificates of insurance * * * against breakage of all plate glass in the premises, * * *.

"20. Lessee shall procure and maintain during the term hereof policies of insurance insuring against:

(a) damage or injury to any of its employees in and about the operation of the demised premises and under the Workman's Compensation Act of the State of Illinois;

(b) public liability covering the demised premises and the use and operation thereof with limits of not less than $100,000 and $300,000 for bodily injury and $5,000 for property damage * * * said insurance to be carried for the benefit and protection of the lessors and lessee; and

(c) loss or damage by boiler or internal explosion by boiler, with limits of not less than $50,000 for each accident.

In *Cerny-Pickas* (7 Ill.2d 393) a large industrial building was destroyed by a fire which was caused by the negligence of the lessee. The lessor brought an action claiming $125,000 and the insurer as subrogee claimed $23,617.54. The jury returned a verdict for $49,538.29 against the lessee. The appellate court affirmed and the question presented to this court was whether the tenant, though negligent, was to be held not liable under the lease for damages. The lease there, as here, did not expressly provide for the tenant's nonliability for fires it might negligently cause. However, our court ruled that even where such an express provision is absent, the instrument may still, "when all of its provisions are considered, show that the parties themselves intended that the lessee should not be liable. That determination is to be made upon a consideration of the instrument as a whole." (7 Ill.2d at 396.) Then, after considering various provisions of the lease, including the redelivery clause which called for the lessee, upon termination of the lease, to turn over the premises to the lessor "in good condition and repair (loss by fire and ordinary wear excepted)," the court declared: "The parties contemplated that the risk of loss by fire should be insured against [by the lessor] and we see no reason to suppose that they did not contemplate the customary insurance policy which covers both accidental and negligent fires. * * * From the lease as a whole we conclude that the lessee was not to be liable for loss by fire regardless of the cause of the fire, and that the parties intended that the lessor should look solely to insurance as compensation for damage caused by any kind of fire." 7 Ill.2d at 398.

It is clear that the dominating consideration in this court's ruling in *Cerny-Pickas* was its determination that the parties had intended that the lessor would look only to fire insurance proceeds to compensate it for fire losses, though the losses might be attributed to the lessee's negligence. The result was economically realistic, for the cost

to the lessor of fire insurance premiums is an item expected to be considered in fixing the amount of rent. Thus, in practical effect it is intended that the premiums will be paid by the lessee through payments of rent. *Cerny-Pickas & Co.* v. *C. R. Jahn Co.,* 7 Ill.2d 393, 398; *Rock Springs Realty, Inc.* v. *Waid* (1965), —— Mo. ——, 392 S.W.2d 270, 278, 15 A.L.R.3d 774, 784.

While the exception in the redelivery clause here, discussed hereafter, did not bear language identical to the one in *Cerny-Pickas,* namely, "loss by fire and ordinary wear excepted" it is evident, considering the lease as a whole, that the intention of the parties was that the lessor would look only to insurance proceeds in the event of loss through fire, though caused by the lessee's negligence. A reading of the lease makes it apparent that the parties, particularly, the lessors, were conscious of the importance of insurance. The lease required the lessee to procure and maintain during the term of the lease insurance to cover plate glass damage on the premises, damage by boiler or boiler explosion, public liability, and damage or injury to employees of the lessee. The lessee was required to deposit with the lessors the policies it procured covering plate glass breakage and the lease specified minimum coverage limits for the public liability and boiler insurance to be procured by the lessee. Though the lessors here did not expressly undertake to procure fire insurance, as the lessor had done in the *Cerny-Pickas* lease, it is obvious, pursuant to a common business practice which the lessors acknowledge, that they would make certain that valuable commercial property, commanding a rental of $436,600 over a 9-year period, would be insured against the catastrophic hazards of fire. As the lessee was required by the lease to maintain other coverages, we conclude that this insurance was to be maintained by the lessors. It is plain that the cost of this insurance was considered in calculating the rental, and an economically realistic conclusion is that the premiums were in practical effect

to be paid by the lessee. As stated, we recognized the validity of this conclusion in *Cerny-Pickas* and quoted from the holding in *General Mills* v. *Goldman,* 184 F.2d 359, 366, "They necessarily consciously figured on the rentals to be paid by the tenant as the source of the fire insurance premiums and intended that the cost of insurance was to come from the tenants. In practical effect the tenant paid the cost of the fire insurance."

Too, paragraph 7 of the lease cautioned that the lessee was not to use the premises in a way which would increase the premiums of or invalidate any insurance policy maintained on the building or leased premises, and declared that the lessee would be obliged to pay the lessors for any increase in the cost of insurance coverage attributable to the lessee's act or neglect. Obviously, any obligation to pay the lessors for premium increases would pertain only to insurance which the lessors would maintain, and not to insurance the lessee was required to secure and maintain. Of an essentially similar lease provision requiring a lessee to pay increases in fire insurance premiums caused by the lessee the Supreme Court of Ohio said: "Clearly under this section of the lease it was contemplated that the lessor would carry insurance on the property and look to the insurance for compensation for any loss by fire. If the parties had intended otherwise, there would have been no reason for such provision." *United States Fire Ins. ·Co.* v. *Phil-Mar Corporation* (1956), 166 Ohio St. 85, 89, 139 N.E.2d 330, 333.

It is reasonable to say that the parties intended that the lessors, who, from a study of the lease, are business persons of prudence and foresightedness, would procure fire insurance in an amount adequate for their protection. Pertinent to adequacy, the Supreme Court of Missouri has observed: "If the lessor * * * chose to carry insurance for less than the full value of the property, any detriment so resulting to it is due to its own fault. We need have no

cumpunction here about the position of the insurers as sub-rogees. Fire insurers expect to pay fire losses for negligent fires and their rates are calculated upon that basis; indeed, we may well assume that a great majority of fires are caused by someone's negligence in a greater or lesser degree." *Rock Springs Realty, Inc.* v. *Waid* (1965), —— Mo. ——, 392 S.W.2d 270, 278, 15 A.L.R.3d 774, 785; accord, *General Mills* v. *Goldman* (8th cir.), 184 F.2d 359, 365; see also, "Effect of Exculpatory Clause in Lessees' Surrender Covenant," 7 Duke L.J. 59, 62.

An observation we made in *Cerny-Pickas* of the lessor's argument there is appropriate in view of the like contention advanced by the lessors here. We said at page 398: "Under the construction urged by the lessor it would be necessary for both parties to the lease to carry fire insurance if they are to be protected. The lessee would have to insure against fires due to his negligence, and the lessor against fires due to other causes. * * * The parties contemplated that the risk of loss by fire should be insured against and we see no reason to suppose that they did not contemplate the customary insurance policy which covers both accidental and negligent fires." It would be a tortured construction, indeed, to say that under the lease here it was proposed that the lessor would procure fire insurance to cover fire risks save those which might be attributable to the negligence of the lessee or its employees. Under such a construction the lessee, to protect itself, then would seek an unusual, if not unique, policy to cover the risk of its own negligence, but nothing more. The only reasonable conclusion we can draw is that the parties intended, judging by their entire expression in the lease, that the lessors were to procure fire insurance and were to look to it to protect them from loss by fire, including fires which might be caused by the lessee's negligence.

The lessors rely strongly on the fact that in *Cerny-Pickas* the lease's redelivery exemption clause provided that

upon termination of the lease the tenant was to return the premises to the landlord in good condition and repair "loss by fire and ordinary wear excepted," whereas in the lease here the redelivery exception clause (paragraph 5) states that at the termination of the lease the lessee shall yield up the premises in as good condition as when it took possession, "ordinary wear and tear or damage by fire or other casualty beyond lessee's control excepted, * * *." They argue that the clause in this lease requires the inference that it was intended that the lessee would be liable for damage by fire caused by its negligence.

We note that the language "ordinary wear and tear or damage by fire or other casualty beyond lessee's control excepted" is not entirely free from ambiguity, but granting the interpretation placed on the clause by the lessors, the clause cannot be considered in isolation to defeat the intent of the parties that is found to be expressed when one views the lease as a whole. The lease in *Cerny-Pickas* had a provision (paragraph 8) which obliged the lessee to maintain all improvements in good repair, which included the language "injury by fire or other causes beyond lessee's control excepted * * *." This provision, with language closely resembling the wording here, was set forth by this court in its opinion but was not discussed, as it was apparent that looking at the lease as a whole it was intended that the lessee was not to be liable for fire, even fire caused by the negligence of the lessee. Here, too, it is apparent that the lease as a whole reveals a like intention and the presence of the incongruous words will not supersede what to us are dominating expresions of intention. An observation made by this court, in *United States Trust Co. of New York* v. *Jones,* 414 Ill. 265 at 272, quoted from the earlier *Street* v. *Chicago Wharfing Co.,* 157 Ill. 605, is appropriate: "Particular expressions will not control where the whole tenor or purpose of the instrument forbids a literal interpretation of the specific words."

40

Viewing the lease as a whole, we judge that the parties manifested a pervading intention that the lessee was not to be liable for damage through fire resulting through the lessee's negligence.

Accordingly, the judgment of the Appellate Court, First District, is reversed and the judgment of the circuit court of Cook County dismissing the lessors' amended complaint is affirmed.

*Appellate Court reversed; circuit court affirmed.*