TOWNE REALTY, INC., *et al.*, Plaintiffs-Appellants, v. JOHN C. SHAFFER, Defendant-Appellee.

Fourth District   No. 4—01—0591

Argued May 15, 2002.—Opinion filed June 25, 2002.

COOK, J., dissenting.

Edward M. Kay, Richard W. Strawbridge, and Paula M. Carstensen (argued), all of Clausen Miller P.C., of Chicago, for appellants.

Kirk W. Laudeman (argued), of Drake, Narup & Mead, P.C., of Springfield, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In September 2000, plaintiffs, Towne Realty, Inc., and Zilber, Ltd. (collectively Towne and Zilber), filed an amended complaint against defendant, John C. Shaffer, seeking to recover for property damage caused by a fire in an apartment Shaffer rented from Towne and Zilber. In October 2000, Shaffer filed a motion to dismiss the amended complaint under sections 2—615 and 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615, 2—619 (West 2000)), arguing that the language of his lease agreement with Towne and Zilber precluded them from suing him for property damage caused by fire. Following a June 2000 hearing, the trial court granted Shaffer's motion to dismiss.

Towne and Zilber appeal the trial court's dismissal of their amended complaint, and we affirm.

## I. BACKGROUND

In January 1998, Shaffer entered into an agreement with Towne and Zilber to lease an apartment in the Lincoln Tower building in Springfield for a three-month period (from February 1, 1998, through April 30, 1998). The form lease agreement, which was drafted by Towne and Zilber, provided, in pertinent part, as follows. Under paragraph two, the "yield-back" clause, Shaffer agreed to

"keep the [apartment] *** in good order and repair and be responsible for any damage to the premises, appliances, furniture, furnishings[,] and equipment, except such as is caused by normal wear and tear."

That paragraph also provided that "[a]t the expiration or termination of this lease, [Shaffer] will yield up the demised premises in good condition and repair, ordinary wear and tear excepted."

Under paragraph three of the lease, Shaffer agreed

"not to use or keep in or about the premises anything which will affect the validity of or increase the premiums on [Towne and Zilber's] property damage and liability insurance policies on the subject premises."

Paragraph four provided, in pertinent part, as follows:

"[Shaffer] shall hold [Towne and Zilber] harmless for any loss or damage which [Shaffer] may sustain:

* * *

(c) From fire, water, rain, frost, ice, snow, gas, odors[,] or fumes from any source whatsoever and from injury or damage caused by the bursting or leaking of pipes or the failure or backing up of sewer drains and pipes.

(d) From any injury to any person or damage to any property."

Under paragraph six of the lease, Shaffer agreed to

"keep the premises in good order and repair and be responsible for any damage to the premises, appliances[,] and equipment thereon, except such as is caused by normal wear and tear."

Paragraph 14 of the lease provided as follows:

"If during the term of this lease the building is so damaged by fire or other casualty, not occurring through [Shaffer's] negligence, that the demised premises is rendered wholly unfit for occupancy and the demised premises cannot be repaired within thirty (30) days from the happening of said casualty, then this lease shall cease and terminate from the date of such casualty."

Paragraph 23 of the lease provides as follows:

"[Shaffer] hereby expressly waives and releases any cause of action or right of recovery which [Shaffer] may have hereafter against [Towne and Zilber] for any loss or damage to the leased premises or to the contents thereof belonging to [Shaffer], caused by fire, explosion, or any other risk covered by [Shaffer's] insurance."

Paragraph 11 of the "Rules and Regulations" portion of the lease provided that "[i]t is the responsibility of [Shaffer] to provide insurance coverage for his personal property."

At some point before Towne and Zilber and Shaffer entered into the lease, Travelers Indemnity Company issued an insurance policy to Towne and Zilber (hereinafter the Travelers policy), which covered damage to property caused by fire, among other things.

In March 2000, Towne and Zilber filed a complaint against Shaffer, alleging that on March 9, 1998, a lit candle or oil lamp in Shaffer's apartment caused a fire in the Lincoln Tower building. In September 2000, Towne and Zilber filed an amended complaint, alleging that Shaffer acted negligently when he (1) placed a lit candle or oil lamp near combustible material in such a way that it created a fire risk to his apartment and the Lincoln Tower building and (2) failed to extinguish the lit candle or oil lamp prior to leaving it unattended. Towne and Zilber sought $671,463.95 for damage to its property, all but $10,000 of which was covered by the Travelers policy.

In October 2000, Shaffer filed a motion to dismiss the amended complaint under sections 2—615 and 2—619 of the Code (735 ILCS 5/2—615, 2—619 (West 2000)), arguing that (1) "[f]or all practical purposes, this is a case brought in the name of the insureds, Towne Realty and Zilber, Ltd., for the use and benefit of Travelers Indemnity Company"; and (2) when Towne and Zilber and Shaffer entered into the lease agreement, they contemplated that Towne and Zilber and its insurer would bear the risk of loss due to fire.

Towne and Zilber later filed a response to the motion to dismiss, arguing that the lease imposed liability on Shaffer for negligently

caused fires. Following a June 2000 hearing on Shaffer's motion to dismiss, the trial court took the matter under advisement. The court subsequently granted the motion to dismiss, upon finding that (1) "the lease provides [Towne and Zilber] would maintain fire insurance on the premises"; and (2) Shaffer was a coinsured under Towne and Zilber's insurance policy.

This appeal followed.

## II. ANALYSIS

### A. Standard of Review

#### 1. *Section 2—619 Motions To Dismiss*

■ Section 2—619 motions to dismiss provide a means for disposing of issues of law or easily proved issues of fact. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115, 619 N.E.2d 732, 735 (1993). In the present case, the ground advanced for dismissing the complaint is that the claims asserted therein are barred by a defense that completely negates the asserted causes of action. See *Payne v. Lake Forest Community High School District 115*, 268 Ill. App. 3d 783, 784-85, 644 N.E.2d 835, 836 (1994); 735 ILCS 5/2—619(a)(9) (West 1998). The trial court should grant the motion and dismiss the complaint if, after construing the allegations in the light most favorable to the plaintiff, no set of facts can be proved that would entitle the plaintiff to recover. We review *de novo* the trial court's granting of a defendant's section 2—619 motion. *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 386, 712 N.E.2d 298, 301 (1998).

#### 2. *Section 2—615 Motions To Dismiss*

■ In *Vernon v. Schuster*, 179 Ill. 2d 338, 344, 688 N.E.2d 1172, 1175 (1997), the supreme court addressed the standard of review for cases dismissed pursuant to section 2—615 of the Code and wrote the following:

> "The question presented by a section 2—615 motion to dismiss is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. [Citations.] A cause of action will not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. [Citation.]
>
> *** Since ruling on a motion to dismiss does not require a court to weigh facts or determine credibility, we review the complaint *de novo*."

## B. Shaffer's Motion To Dismiss

Towne and Zilber argue that the trial court erred by granting Shaffer's motion to dismiss the amended complaint. We disagree.

■ Under Illinois law, a lease is an agreement subject to the law of contracts. *American Apartment Management Co. v. Phillips*, 274 Ill. App. 3d 556, 559, 653 N.E.2d 834, 836 (1995). Leases should be construed as a whole to ascertain the parties' intent (see *Dix Mutual Insurance Co. v. LaFramboise*, 149 Ill. 2d 314, 320, 597 N.E.2d 622, 625 (1992) ("courts must look to the lease 'as a whole' and the spirit of the agreement between the parties")), and the words used should be given their plain and generally accepted meaning (*Book Production Industries, Inc. v. Blue Star Auto Stores, Inc.*, 33 Ill. App. 2d 22, 31, 178 N.E.2d 881, 885 (1961)). In instances where the terms of a lease are unambiguous, they must be enforced as written, and no court can rewrite a lease to provide a better bargain to suit one of the parties. *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 349, 736 N.E.2d 145, 154 (2000). If uncertainties exist regarding the meaning of the language of the lease, courts construe the language against the lessor and in the lessee's favor. *American National Bank & Trust Co. v. Lembessis*, 116 Ill. App. 2d 5, 11, 253 N.E.2d 126, 128 (1969); see also Restatement (Second) of Contracts § 206, Comment *a*, at 105 (1981) ("Where one party chooses the terms of a contract, he is *** more likely than the other party to have reason to know of uncertainties of meaning. Indeed, he may leave meaning deliberately obscure, intending to decide at a later date what meaning to assert. In cases of doubt, therefore, so long as other factors are not decisive, there is substantial reason for preferring the meaning of the other party. The rule is often invoked in cases of standardized contracts and in cases where the drafting party has the stronger bargaining position").

Our supreme court has previously considered whether a tenant can be held liable for negligently causing fire damage to leased premises. In the seminal case, *Cerny-Pickas & Co. v. C.R. Jahn Co.*, 7 Ill. 2d 393, 131 N.E.2d 100 (1955), the landlord rented an industrial building to the tenant, who later negligently caused a fire in the building. The landlord and the landlord's insurer later filed a cause of action against the tenant to recover damages for the loss of the building and equipment therein. The jury returned a verdict against the tenant, and the appellate court affirmed. On appeal to the supreme court, the tenant argued that the lease exempted it from any liability to the landlord or the landlord's insurer subrogee for any loss caused by the fire. *Cerny-Pickas*, 7 Ill. 2d at 394, 131 N.E.2d at 101.

The lease in *Cerny-Pickas*, as here, did not expressly provide for the tenant's nonliability for fires it might negligently cause. However,

the supreme court ruled that even when such an express provision is absent, the lease may still, "when all of its provisions are considered, show that the parties themselves intended that the lessee should not be liable. That determination is to be made upon a consideration of the instrument as a whole." *Cerny-Pickas*, 7 Ill. 2d at 396, 131 N.E.2d at 102-03. The court rejected the landlord's argument that the parties intended that the tenant was to remain liable for negligently caused fire damage, stating that "[i]t is more reasonable to assume *** that laymen would regard the word 'fire' as including all fires whether of negligent origin or otherwise." *Cerny-Pickas*, 7 Ill. 2d at 397, 131 N.E.2d at 103. The court further reasoned as follows:

> "Under the construction urged by the lessor[,] it would be necessary for both parties to the lease to carry fire insurance if they are to be protected. The lessee would have to insure against fires due to his negligence, and the lessor against fires due to other causes. Whether the kind of policy the lessee would have needed was commercially available when the present lease was entered into is at best dubious. *** *The parties contemplated that the risk of loss by fire should be insured against [by the lessor] and we see no reason to suppose that they did not contemplate the customary insurance policy which covers both accidental and negligent fires.* *** From the lease as a whole we conclude that the lessee was not to be liable for loss by fire regardless of the cause of the fire, and that the parties intended that the lessor should look solely to insurance as compensation for damage caused by any kind of fire." (Emphasis added.) *Cerny-Pickas*, 7 Ill. 2d at 398, 131 N.E.2d at 103.

Finally, the court stated as follows:

> " 'The ancient law has been acquiesced in, and consciously or unconsciously, the cost of insurance to the landlord, or the value of the risk enters into the amount of rent.' [*Lothrop v. Thayer*, 138 Mass. 466, 475 (1885).] *** 'They necessarily consciously figured on the rentals to be paid by the tenant as the source of the fire insurance premiums and intended that the cost of insurance was to come from the tenants. In practical effect[,] the tenant paid the cost of the fire insurance.' [*General Mills v. Goldman*, 184 F.2d 359, 366 (8th Cir. 1950).]" *Cerny-Pickas*, 7 Ill. 2d at 398, 131 N.E.2d at 104.

Accordingly, the court held that the lease absolved the tenant of any liability for negligently causing fire damage to the building. *Cerny-Pickas*, 7 Ill. 2d at 398, 131 N.E.2d at 104.

In *Stein v. Yarnall-Todd Chevrolet, Inc.*, 41 Ill. 2d 32, 33-34, 241 N.E.2d 439, 440 (1968), the lessors rented a commercial building to the tenant, who later allegedly negligently caused a fire in the building. On appeal, the supreme court considered the lease in light of

538

*Cerny-Pickas* and concluded that it manifested an intent to exculpate the lessee from liability for negligently causing fire damage. *Stein*, 41 Ill. 2d at 40, 241 N.E.2d at 443. Although the lease did not expressly provide that the lessors would procure fire insurance, the supreme court noted that "it is obvious, pursuant to a common business practice which the lessors acknowledge, that they would make certain that valuable commercial property *** would be insured against the catastrophic hazards of fire." *Stein*, 41 Ill. 2d at 36, 241 N.E.2d at 442.

The *Stein* court also construed a lease provision requiring the lessee to pay increases in insurance premiums caused by lessee, as follows:

> "Obviously, any obligation to pay the lessors for premium increases would pertain only to insurance which the lessors would maintain, and not to insurance the lessee was required to secure and maintain. *** '*Clearly under this section of the lease it was contemplated that the lessor would carry insurance on the property and look to the insurance for compensation for any loss by fire.* If the parties had intended otherwise, there would have been no reason for such provision.' [Citation.]" (Emphasis added.) *Stein*, 41 Ill. 2d at 37, 241 N.E.2d at 442.

Faced with a situation in which the landlord implicitly agreed to provide fire insurance, the *Stein* court recognized the basic absurdity of also placing a duty on the tenant, who in effect paid for the landlord's insurance through rental payments, to seek a separate policy to protect against its own negligence. In that regard, the court stated:

> "It would be a tortured construction, indeed, to say that under the lease here it was proposed that the lessor would procure fire insurance to cover fire risks save those which might be attributable to the negligence of the lessee or its employees. Under such a construction[,] the lessee, to protect itself, then would seek an unusual, if not unique, policy to cover the risk of its own negligence, but nothing more. The only reasonable conclusion we can draw is that the parties intended, judging by their entire expression in the lease, that the lessors were to procure fire insurance and were to look to it to protect them from loss by fire, including fires which might be caused by the lessee's negligence." *Stein*, 41 Ill. 2d at 38, 241 N.E.2d at 443.

In *Dix*, 149 Ill. 2d at 317, 597 N.E.2d at 623-24, the supreme court revisited the issue of a tenant's liability for negligently caused fire damage to leased property. In that case, the lease between the landlord and the tenant contained no provision regarding fire insurance, and the only provision that could be considered to relate to that issue provided that "[t]he [t]enant will assume their [*sic*] own risk for their

[*sic*] personal property and [the landlord] will not be responsible for fire, wind, or water damage." *Dix*, 149 Ill. 2d at 318, 597 N.E.2d at 624. The landlord's insurance company subsequently sought to recover damages from the tenant because the tenant allegedly caused fire loss to the rental property due to his negligence. The trial court found that (1) the parties did not intend for the tenant to be liable for fire damage to the landlord's property and (2) the tenant was a coinsured under the landlord's insurance policy. After the appellate court reversed the trial court's decision, the tenant appealed to the supreme court. *Dix*, 149 Ill. 2d at 317, 597 N.E.2d at 623.

The supreme court, construing the lease as a whole and looking to the "spirit of the agreement between the parties," concluded that the lease reflected the intent of the parties to exculpate the tenant from both accidental and negligently caused fires. *Dix*, 149 Ill. 2d at 320, 597 N.E.2d at 625. The court stated, in pertinent part, as follows:

> "The lease 'as a whole' indicated that the tenant wanted shelter for one year for which he promised to pay a modest rent, furnish his own utilities, perform certain services on the farm, and assume the risk for his own personal property. The landlord agreed. Although one may be critical of the grammar, punctuation[,] or even the style of the lease, it is difficult to find fault with the spirit of the document. In drafting this document, the landlord expressly placed minor duties on the tenant. 'As a whole,' the lease does not reflect any intent that, during the course of the one-year term, the tenant would be responsible for any fire damage to the realty and be required to pay an additional $40,579 to the landlord. Such a proposition would probably be beyond the wildest dreams of the parties." *Dix*, 149 Ill. 2d at 321, 597 N.E.2d at 625.

The *Dix* court further concluded that the parties intended for each to be responsible for his own property, finding it "significant that the parties, who obviously considered the possibility of fire, expressly provided for the tenant's personal property but failed to do so with respect to the leased premises." *Dix*, 149 Ill. 2d at 322, 597 N.E.2d at 626. The court explained:

> " ' "Fire insurers expect to pay fire losses for negligent fires and their rates are calculated upon that basis; indeed, we may well assume that a great majority of fires are caused by someone's negligence in a greater or lesser degree." [Citations.]' [Citation.]
>
> Under the insurance company's argument: 'it would be necessary for both parties to the lease to carry fire insurance if they are to be protected. The lessee would have to insure against fires due to his negligence, and the lessor against fires due to other causes. *** *The parties contemplated that the risk of loss by fire should be insured against and we see no reason to suppose that they did not contem-*

*plate the customary insurance policy which covers both accidental and negligent fires.'* [Citation.]" (Emphasis added.) *Dix*, 149 Ill. 2d at 322, 597 N.E.2d at 626.

Finally, relying on *Cerny-Pickas*, the *Dix* court reasoned that the tenant was a coinsured on the landlord's insurance policy and stated, in pertinent part, as follows:

"Under the particular facts of this case, the tenant, by payment of rent, has contributed to the payment of the insurance premium, thereby gaining the status of co-insured under the insurance policy. Both the landlord and tenant intended that the policy would cover any fire damage to the premises no matter who caused it, and to conclude otherwise would defeat the reasonable expectations of the parties." *Dix*, 149 Ill. 2d at 323, 597 N.E.2d at 626.

Accordingly, the court concluded that "under the provisions of the lease as a whole, the reasonable expectations of the parties, and the principles of equity and good conscience, the [landlord's] insurance company cannot maintain a subrogation action against the tenant." *Dix*, 149 Ill. 2d at 323, 597 N.E.2d at 626.

■ Our review of the above supreme court decisions reveals that the key factor in determining whether the parties intended to exculpate the tenant from liability for negligently caused fire damage to the leased premises is the allocation of insurance burdens as evidenced by the lease. When the provisions of the lease either explicitly or implicitly indicate that the lessor will obtain insurance against the risk of fire loss to its building, the tenant will normally not be liable for negligently causing fire damage to that building unless the parties' contrary intent is clear. Such a rule gives effect to the parties' probable and customary intent that the landlord is to look to the insurance he has agreed to procure for indemnification for fire loss. As the aforementioned supreme court decisions make clear, (1) when the parties contemplate that the landlord will insure against the risk of fire loss to his building, and (2) when the lease does not plainly evince the parties' intent that the tenant will be liable for fire damage due to his negligence, it would be incongruous to require both the landlord and the tenant to insure the leased building. In addition, as the *Dix* court explained, under such circumstances, the tenant is essentially a coinsured under the landlord's insurance policy by virtue of his payment of rent.

■ Thus, in this case, Shaffer is not liable for negligently caused fire damage to the Lincoln Tower building unless, under the provisions of the lease, the parties' contrary intent is beyond question. Our review of the lease as a whole shows that such a contrary intent is not clearly evident.

First, we reject Towne and Zilber's contention that under the provisions of the lease, Shaffer is liable for fire damage to the Lincoln Tower building caused by his negligence. A reading of the lease indicates that the parties considered the contingency of fire within the Lincoln Tower building. The lease also shows that the parties contemplated that Towne and Zilber would obtain insurance against the risk of fire loss to the Lincoln Tower building. Paragraph 11 of the rules and regulations of the lease provides that it is Shaffer's responsibility to insure his own personal property. However, no requirement was stated that Shaffer insure the leased apartment itself or the Lincoln Tower building. Paragraph three, on the other hand, directs that Shaffer "not use or keep about the premises anything which will affect the validity of or increase the premiums on [Towne and Zilber's] property damage and liability insurance policies on the subject premises." This language demonstrates that the parties contemplated that Towne and Zilber would maintain insurance on the Lincoln Tower building. See *Stein*, 41 Ill. 2d at 37, 241 N.E.2d at 442 (construing a lease provision similar to paragraph three in this lease).

Towne and Zilber rely heavily on the fact that the yield-back clause does not explicitly exempt fire damage from Shaffer's obligation to return the premises in good condition. While the yield-back clause of a lease is an indicator of the parties' intent, failure to exempt fire damage therein merely raises ambiguity with respect to that intent. See *Continental Casualty Co. v. Polk Brothers, Inc.*, 120 Ill. App. 3d 395, 401, 457 N.E.2d 1271, 1276 (1983) (discussing such a clause). The yield-back clause in *Stein* is particularly instructive because in that case, only damage by fire "beyond lessee's control" was exempted, strongly indicating that fires due to the lessee's negligence were not to be exonerated. The *Stein* court rejected this interpretation and construed the yield-back clause in relation to another lease provision requiring lessee to pay for increases in insurance premiums caused by lessee as evincing the landlord's intent to exculpate the lessee from liability and look only to the insurance proceeds for indemnification. *Stein*, 41 Ill. 2d at 37-40, 241 N.E.2d at 442-43; see also *Continental*, 120 Ill. App. 3d at 404, 457 N.E.2d at 1277-78 (concluding that the lessee was not liable for negligently caused fire damage under the lease even though the yield-back clause did not specifically exempt fire damage: "Lessee shall return the premises and all equipment and fixtures therein in as good condition as when [l]essee took possession, ordinary wear and tear excepted").

Towne and Zilber also point to paragraph six of the lease, under which Shaffer agreed to "be responsible for any damage to the premises, appliances[,] and equipment thereon, except such as is

caused by normal wear and tear." However, that language is of a general nature referring to "any damage" and makes no reference to damage caused by fire. Although three of the lease provisions specifically address fire damage, none of those provisions purport to hold Shaffer liable for negligently caused fire damage. (Paragraph four holds Towne and Zilber harmless for any fire damage Shaffer might sustain. Paragraph 14 provides that if Shaffer's apartment is rendered unfit for occupancy due to fire not resulting from Shaffer's negligence, the lease would terminate. Under paragraph 23, Shaffer waived any cause of action against Towne and Zilber for damage to his apartment or its contents resulting from fire.)

This lease, which was drafted by Towne and Zilber, could have expressly provided that Shaffer would be liable for fire damage to the Lincoln Tower building resulting from his own negligence. However, it did not. See *Windsor at Seven Oaks v. Kelly*, 113 Ill. App. 3d 978, 980-81, 448 N.E.2d 251, 253 (1983) ("Where a landlord has drafted the lease, a court will not impose a responsibility upon the tenant unless the circumstances and the contract clearly indicate that the tenant intended to assume such a responsibility").

Accordingly, because the lease as a whole does not evince the parties' intent that, during the course of his three-month lease, Shaffer would be liable for negligently caused fire damage to the Lincoln Tower building, we conclude that the trial court did not err by granting Shaffer's motion to dismiss Towne and Zilber's amended complaint.

Our conclusion comports not only with our supreme court's decisions on this issue but also with the realities of apartment renting. As the court wrote in *Peterson v. Silva*, 428 Mass. 751, 754, 704 N.E.2d 1163, 1165-66 (1999):

" 'Prospective tenants ordinarily rely upon the owner of the dwelling to provide fire protection for the realty (as distinguished from personal property) absent an express agreement otherwise. Certainly it would not likely occur to a reasonably prudent tenant that the premises were without fire insurance protection or if there was such protection it did not inure to his benefit and that he would need to take out another fire policy to protect himself from any loss during his occupancy.' [Citation.] This reasoning is echoed in R.E. Keeton, Insurance Law § 4.4(b), at 210 (1971): 'Probably it is undesirable, from the point of view of public interest, that the risk of loss from a fire negligently caused by a lessee be upon the lessee rather than the lessor's insurer. Allowing the lessor's insurer to proceed against the lessee is surely contrary to expectations .... [P]erhaps [the courts] should at least adopt a rule against allowing the lessor's insurer to proceed against the lessee when lease provisions are ambiguous in this regard and the insurance policy is silent or ambiguous.' "

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

KNECHT, J., concurs.

JUSTICE COOK, dissenting:

I respectfully dissent. I would reverse and remand the decision of the trial court.

"Although a tenant is generally liable for fire damage caused to the leased premises by his negligence, if the parties intended to exculpate the tenant from negligently caused fire damage, their intent will be enforced." *Dix*, 149 Ill. 2d at 319, 597 N.E.2d at 625. "The lease between the landlord and the tenant must be interpreted as a whole so as to give effect to the intent of the parties." *Dix*, 149 Ill. 2d at 320, 597 N.E.2d at 625.

In *Cerny-Pickas*, 7 Ill. 2d at 395, 398-99, 131 N.E.2d at 102, 103, the supreme court held the tenant to be covered by the landlord's fire policy where the yield-back provision provided that lessee "will yield up said premises to Lessor in good condition and repair (loss by fire and ordinary wear excepted)." There was a similar clause, albeit one "not entirely free from ambiguity," in *Stein*, 41 Ill. 2d at 39, 241 N.E.2d at 443. The very simple lease in *Dix* did not contain a yield-back clause, but the supreme court did not view that as fatal to the tenant's position. *Dix* seems to have expanded *Cerny-Pickas* to provide coverage for the tenant (1) where the lease as a whole shows the intent of the parties that the lessee should not be liable; or (2) where the lease is basically silent on the subject but there is some suggestion the landlord will obtain a fire policy; but not (3) where the lease expressly provides the tenant is responsible for damage.

*Dix* found it significant that the very simple lease before it assigned responsibility for damage to the tenant's personal property (tenant, not landlord, responsible), but failed to address responsibility for damage to the leased premises, and the landlord took out a fire insurance policy to cover the leased premises. *Dix*, 149 Ill. 2d at 322, 597 N.E.2d at 626. In the present case, the lease does address responsibility for damage to the leased premises and it expressly makes the tenant responsible for that damage. Both the maintenance-of-the-premises clause and the yield-back clause provide that lessee shall "be responsible for any damage to the premises," furnishings, and equipment, except "as is caused by normal wear and tear." The landlord in this case did take out a fire insurance policy which covered the leased

premises, but so did the tenant (a liability policy). This is not a case where we suspect some informal agreement that one person or the other will take out a policy which protects both.

Defendant Shaffer directs our attention to the clause dealing with the use of the premises, providing that "Lessee shall not use or keep in or about the premises anything which will affect the validity of or increase the premiums on the Lessor's property damage and liability insurance policies on the subject premises." This language does suggest that the lessor will obtain fire insurance, but as discussed above, there is no indication here that lessor will obtain insurance and lessee need not do so. The clause also discusses the lessor's liability insurance. Is the lessee to be covered by the lessor's liability insurance? If lessee is playing with a gun in his apartment and negligently injures someone passing by on the street, must lessor's liability insurance provide coverage? It would impose a severe burden to require an insurer to cover the liability of an individual with whom it had not dealt. See *Dix*, 149 Ill. 2d at 325, 597 N.E.2d at 627 (Freeman, J., specially concurring) (expressing concern that the logical import of these arguments might make the tenant a coinsured of the landlord's negligence liability policy). The fire in this case damaged other apartments. What logic is there in making Shaffer a coinsured of Towne and Zilber's fire policy as to those other apartments? Certainly Shaffer would be liable for any damage to the individual property of other tenants. Must Towne and Zilber's liability policy provide coverage for that damage?

This lease makes the tenant "responsible for any damage to the premises." If the tenant lets his sink overflow, damaging the apartment and those below, if the tenant's children knock holes in the walls, if the tenant's dog scratches the floors, the tenant is responsible. Why should a tenant be responsible in all these situations but relieved of responsibility if he abandons burning candles which damage the apartment? Making individuals responsible for the damage they cause encourages individuals to act carefully. We should be cautious in destroying that incentive.

If there were no insurance here, if this were simply a suit between the landlord and tenant, the tenant would clearly be liable. There is no justification for changing that result when the parties have purchased insurance.

The majority states that "[t]his lease, which was drafted by Towne and Zilber, could have expressly provided that Shaffer would be liable for fire damage to the Lincoln Tower building resulting from his own negligence. However, it did not." 331 Ill. App. 3d at 542. I suggest that the lease did so provide. "The Lessee hereby agrees to keep the

premises in good order and repair and be responsible for any damage to the premises." In hindsight any provision could be more specific (tenant shall be responsible for fire damage, damage caused by overflowing sinks, damage caused by children, and damage caused by dogs), but specificity carries its own problems. The lease here expressed the intent that the tenant would be responsible for "any damage." A specific reference to fire damage could give rise to the argument that damage other than fire damage was not covered, the rule of *ejusdem generis*. The fact that this lease did not specifically refer to fire damage did not make it ambiguous.

The doctrine of construction against the drafter is not really a rule of construction at all. Instead of attempting to discern the intent of the parties, the doctrine simply decides who will win the case, like flipping a coin. The rule is at best a secondary rule of interpretation, a last resort which may be invoked only after all the ordinary interpretive guides have been exhausted. *Premier Title Co. v. Donahue*, 328 Ill. App. 3d 161, 165-66, 765 N.E.2d 513, 517 (2002). We are not at that stage in this case. This lease expressly makes the tenant liable for any damage to the apartment and does not require either the landlord or the tenant to obtain insurance which covers the other.