2024 IL App (1st) 230833

SIXTH DIVISION
August 23, 2024

No. 1-23-0833

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, a/s/o Renaissance Realty Group, Inc., | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 21 L 644 |
| | ) | |
| | ) | |
| NORINAICA GONZALEZ, | ) | Honorable |
| | ) | Justice James E. Snyder, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE C.A. WALKER delivered the judgment of the court, with opinion.
Presiding Justice Oden Johnson and Justice Hyman concurred in the judgment.

**OPINION**

¶ 1     In this subrogation action, Plaintiff Philadelphia Indemnity Insurance Company

(Philadelphia), as subrogee of Renaissance Realty Group, Inc. (Renaissance), appeals from the

circuit court's partial grant of defendant Norinaica Gonzalez's motion to dismiss, contending the

court erred by interpreting the lease between Renaissance, as landlord, and Gonzalez, as tenant, to limit Gonzalez's liability for negligent conduct to damages to her rental unit. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3     On September 25, 2019, Renaissance and Gonzalez entered into a written lease agreement (hereinafter "Lease") for an apartment ("Unit 601") in a multi-unit building located on the 1500 block of West Belmont Avenue in Chicago.

¶ 4     The Lease, contained in the record on appeal, contains multiple provisions relevant to the resolution of Philadelphia's claims. On the first page of the Lease, Unit 601 is described as the "Leased Address (Premises)." Another provision on the first page states:

> "In consideration of the mutual covenants and agreements herein stated, Landlord(s) hereby leases to Tenant(s) and Tenant(s) hereby leases from Landlord(s) for use as a private dwelling only, the Premises, together with the fixtures and appliances listed below (if any) in the premises, for the above Term of Lease, subject to all the provisions of this Lease."

¶ 5     Also on the first page, in a section labeled "Landlord's Property Insurer," Philadelphia is listed as Renaissance's insurer. In the section immediately below, labeled "Tenant's Property Insurer, if required by the Landlord," there is no insurer listed.

¶ 6     Section 10, labeled "Tenant Maintenance Obligations," provides:

> "Tenant shall maintain the Premises in a clean, presentable and safe condition at all times and in accordance with all health, safety and building code regulations. At the termination of this Lease and upon surrender of the Premises, all fixtures, appliances and personal property of the Landlord shall be in the same condition as they were on the Beginning Date, normal wear and tear excepted. Landlord may at its sole option use all or

- 2 -

part of the Security Deposit (if any) to repair any damage to the Landlord's property caused either directly by Tenant or by Tenant's negligence."

¶ 7 Section 19 of the Lease, labeled "Damages and Negligence," states: "Tenant shall be liable for any damage done to the premises as a result of Tenant's or Tenant's invitees, guests, or others authorized to reside in the Premises direct action, negligence, or failure to inform Landlord of repairs necessary to prevent damage to the Premises."

¶ 8 In a portion of the Lease titled the "Rules and Regulations," item #10 provides, in relevant part, that, "[A]ny liability or loss arising from the use or operation of a grill shall be borne by Tenant."

¶ 9 On January 20, 2021, Philadelphia filed a complaint, as subrogee to Renaissance, against Gonzalez. Therein, Philadelphia alleged that on August 7, 2020, a small fire started in Gonzalez's kitchen in Unit 601, which caused "a substantial amount of smoke" and activated the building's sprinkler system. The sprinkler system caused significant water damage to both Unit 601 and other units, totaling over $200,000.

¶ 10 Renaissance submitted an insurance claim to Philadelphia, which paid "in excess of $50,000 to cover" repairs and lost rental income. Philadelphia alleged Gonzalez was liable to reimburse Philadelphia, as subrogee to Renaissance, for this coverage. Specifically, count I of the complaint alleged Gonzalez negligently caused the fire that resulted in the property damage. Count II alleged that Gonzalez breached the Lease because it required her to pay for any damages caused by her negligence, but she violated this term by refusing to reimburse Philadelphia. Philadelphia attached the Lease to the complaint.

¶ 11    On May 20, 2021, Gonzalez moved to dismiss the complaint under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2020)), arguing she was an implied coinsured of Renaissance's policy pursuant to the Illinois Supreme Court's holding in *Dix Mutual Insurance Co. v. LaFramboise*, 149 Ill. 2d 314 (1992), and thus could not be sued by Philadelphia in subrogation.

¶ 12    On June 30, 2021, Philadelphia responded, arguing in relevant part that the Lease terms demonstrated the parties' intent not to make Gonzalez an implied coinsured. In so arguing, Philadelphia alleged Gonzalez obtained a $300,000 "general liability insurance" policy through State Farm. The State Farm policy is not included in the record, though Gonzalez acknowledged its existence in her reply to Philadelphia's response to her motion to dismiss.

¶ 13    On July 26, 2021, the circuit court denied Gonzalez's motion in part and granted it in part. With respect to count I, for negligence, the court denied Gonzalez's motion and explained, "the Court does not find that [Gonzalez] was intended to be a coinsured, and the motion to dismiss is denied." Regarding count II, for breach of contract, the court granted Gonzalez's motion in part and limited Philadelphia's recoverable damages to those damages caused to Unit 601 only. The court wrote that Section 19 of the Lease could functionally be understood as stating "Tenant shall be liable for any damage done to the premises as a result of Tenant's negligence" and found the term "premises" referred only to Unit 601, thus excluding Gonzalez from liability for damage outside of Unit 601. Accordingly, the court found Philadelphia could not "seek compensation for damage beyond" Unit 601.

¶ 14    On September 20, 2021, Philadelphia filed a Motion for Clarification and Reconsideration. Therein, Philadelphia relayed that, "[a]t the August 31, 2021 case management conference, [the

circuit court] *** advised that the damages were limited to the unit of origin with respect to both Counts I and II even though that language is not currently found in the Court's Order." Philadelphia asked the court to reconsider because a "logical interpretation" of the July 26, 2021, order was that Philadelphia could "recover all of its damages pursuant to Count I," including damages beyond Unit 601. On November 17, 2021, the circuit court denied Philadelphia's motion in its entirety.

¶ 15    Gonzalez answered the complaint on December 21, 2021, and on February 28, 2022, Philadelphia moved for summary judgment regarding the damages arising from Unit 601 only, which it alleged totaled $18,831.04. Gonzalez opposed the motion, claiming genuine issues of material fact existed regarding proximate cause and whether (1) she acted negligently and (2) other parties acted negligently to contribute to any alleged damages.

¶ 16    On June 3, 2022, the circuit court granted Philadelphia's motion for summary judgment as to liability only on Counts I and II for damages to Unit 601, with the total of those damages to be determined at trial. The court later transferred the matter from the Law Division to the Municipal Division of the circuit court.

¶ 17    On March 28, 2023, the parties agreed to a consent judgment against Gonzalez in the amount of $18,831.04 for only those damages to Unit 601 and specified in the agreed order that, "Should the circuit court's July 26, 2021 order be reversed and remanded by a reviewing court, both parties agree that discovery as to negligence, liability with respect to alleged damages outside of [U]nit 601, and alleged damages as to the multi-unit residential apartment building *** should proceed." The court entered the agreed order on April 11, 2023. This appeal followed.

¶ 18                                    II. JURISDICTION

¶ 19    The circuit court entered the agreed order on April 11, 2023, and Philadelphia filed its notice of appeal on May 8, 2023. Accordingly, this court has jurisdiction, pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017).

¶ 20                                    III. ANALYSIS

¶ 21    On appeal, Philadelphia claims the circuit court erred in limiting its recoverable damages to Unit 601 after determining Gonzalez was not an implied coinsured. Gonzalez responds that the court correctly interpreted the lease.

¶ 22    Philadelphia's claim is based on the circuit court's partial grant of Gonzalez's section 2-619 motion to dismiss. 735 ILCS 5/2-619 (West 2020). "When deciding a motion based on section 2-619, a court is to accept all well-pled facts in the complaint as true and will grant the motion only when it appears that no set of facts could be proved that would allow the plaintiff to recover." *Dawkins v. Fitness International, LLC*, 2022 IL 127561, ¶ 24. The reviewing court will "construe the pleadings and supporting documents in the light most favorable to the nonmoving party." *Id.* We review the grant of a motion to dismiss *de novo*. *Id.*

¶ 23    This case presents a matter of contractual interpretation, as a lease is a "type of contract [citation], and, as such, it is governed by the rules which govern contracts generally." *Midland Management Co. v. Helgason*, 158 Ill. 2d 98, 103 (1994). A reviewing court's goal in interpreting a contract is to give effect to the parties' intent based on the document as a whole. *Id.* at 104. "The parties' intent is not determined by viewing a clause or provision in isolation ***." *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). Where a contract's terms are clear and unambiguous, we must enforce those terms without reference to extrinsic sources. *Id.* We review *de novo* a lower

court's interpretation of the lease's terms. *Department of Transportation v. 600 West Dundee, LLC*, 2019 IL App (1st) 181699, ¶ 7.

¶ 24    *Dix* provides the starting point for our interpretation of the Lease. *Dix*, 149 Ill. 2d 314. In *Dix*, the landlord and the tenant entered into a lease agreement that provided, in relevant part, the tenant " 'will assume their [*sic*] own risk for their [*sic*] personal property and Landlord *** will not be responsible for fire, wind, or water damage.' " *Id.* at 318. Thereafter, the leased premises were damaged in a fire started by the tenant. *Id.* The landlord's insurance company paid the claim and then filed a subrogation action against the tenant to recover what it paid. *Id.* The Illinois Supreme Court held that the insurance company could not maintain an action against the tenant. *Id.* at 323. The court explained that the lease, read as a whole, "does not reflect any intent that, during the course of the one-year term, the tenant would be responsible to any fire damage to the realty." *Id.* at 321.

¶ 25    The court explained that it found "significant that the parties, who obviously considered the possibility of fire, expressly provided for the tenant's personal property but failed to do so with respect to the leased premises," which indicated "that the parties intended for each to be responsible for his own property." *Id.* at 322. In so finding, the court also noted that the landlord maintained its own fire insurance policy and explained that a rent-paying tenant essentially becomes an implied coinsured of such a policy. *Id.* at 322-23.

¶ 26    Following *Dix*, the majority view has developed that a tenant will not be responsible for damages to the property caused by the tenant's negligence "unless the parties' contrary intent is clear" from the terms of the lease. *Towne Realty, Inc. v. Shaffer*, 331 Ill. App. 3d 531, 540 (2002); see *Cincinnati Insurance Co. v. DuPlessis*, 364 Ill. App. 3d 984, 986 (2006) (The "clear import"

of *Dix* is, regarding negligently caused fire damage, "unless the parties' contract expressly makes the tenant liable, it will be presumed that the parties did not so intend."). One court explained that

> "it would be incongruous to require both the landlord and the tenant to obtain fire insurance on the same premises, and because the tenant in essence pays for the insurance out of his rent, the tenant, as a matter of law, is exculpated from liability for negligently causing fire damage to the building where the landlord procures insurance thereon." *American National Bank & Trust Co. v. Edgeworth*, 249 Ill. App. 3d 52, 56 (1993).

The *Towne* court further explained that the *Dix* court's discussion of tenants as implied co-insureds was not outcome-determinative; instead, the focus in interpreting the lease should be on who bears the insurance burden:

> "[T]he key factor in determining whether the parties intended to exculpate the tenant from liability for negligently caused fire damage to the leased premises is the allocation of insurance burdens as evidenced by the lease. When the provisions of the lease either explicitly or implicitly indicate that the lessor will obtain insurance against the risk of fire loss to its building, the tenant will normally not be liable for negligently causing fire damage to that building unless the parties' contrary intent is clear. Such a rule gives effect to the parties' probable and customary intent that the landlord is to look to the insurance he has agreed to procure for indemnification for fire loss. *** In addition, as the *Dix* court explained, under such circumstances, the tenant is essentially a coinsured under the landlord's insurance policy by virtue of his payment of rent." *Towne*, 331 Ill. App. 3d at 540 (discussing *Dix* decision).

¶ 27    Applying these principles here, and considering the Lease in its entirety, we find that Philadelphia and Gonzalez did not intend for Gonzalez to be generally liable for negligently caused fire damage outside of Unit 601. Therefore, we affirm the circuit court's order limiting Philadelphia's recoverable damages. The Lease expressly contemplates specific instances where Gonzalez *will* be liable for negligently caused damage—"Rules and Regulations," part 10's provision regarding the grill, and section 19, making her liable for damages to Unit 601, described therein as the "premises." The Lease does not contain an express provision specifically making Gonzalez liable for damages due to her negligence beyond Unit 601 and explicitly states that Renaissance alone bears the general insurance burden. Thus, like the lease at issue in *Dix*, the Lease shows that Renaissance and Gonzalez considered the issue of insurance responsibility between the parties, then expressly made Gonzalez liable only in specific instances, while placing the general insurance responsibility on Renaissance. See *Dix*, 149 Ill. 2d at 322 (Where the lease enumerated instances where the tenant was responsible for his personal property, the contract's silence as to the tenant's liability for the premises as a whole indicated "that the parties intended for each to be responsible for his own property."). Under these terms, the circuit court correctly concluded that Illinois law maintains Gonzalez was not liable for negligently caused fire damage outside of Unit 601.

¶ 28    Philadelphia raises arguments disputing this interpretation of the Lease. First, Philadelphia points to Section 19's language that Gonzalez is liable for any negligence causing damage to the "premises," focusing on the fact that the word "premises" in line 1 is not capitalized. This, Philadelphia contends, was intentional and means that the "premises" referred to in Section 19, line 1, is different from the "Premises" as defined on page 1 of the Lease, which refers specifically

to Unit 601. Instead, Philadelphia argues, the lowercase "premises" in Section 19 should be interpreted to subject Gonzalez to liability for the building as a whole.

¶ 29     This interpretation fails because it is counter to how the term "[P/p]remises" is used in the Lease, whether capitalized or not, and how the areas of the building outside of Unit 601 are referred to in the Lease. Philadelphia's contention that the lowercase "premises" in Section 19 is meant to delineate something different than the capitalized "Premises" is belied by one of the first entries on the first page, where the Lease uses the capitalized and uncapitalized versions terms interchangeably:

> "In consideration of mutual covenants and agreements herein stated, Landlord(s) hereby lease to Tenant(s) and Tenant(s) hereby leases from Landlord(s) for use as a private dwelling only, the Premises, together with the fixtures and appliances listed below (if any) in the premises, for the above Term of Lease, subject to all the provisions of this Lease."

In this section, both "Premises" and "premises" indisputably refer to Unit 601. This demonstrates that the term, whether capitalized or not, refers to Unit 601. This is also demonstrated by the lowercase "premises" being used to only possibly refer to Unit 601 in Section 40 ("If the premises is a condominium or part of a Homeowners Association ***"). In fact, "[P/p]remises" is never used to refer to another area outside of Unit 601 *unless* one adopts the interpretation of line 1 in Section 19 for which Philadelphia advocates.

¶ 30     Our interpretation of the Lease is supported by the fact that the areas outside of Unit 601 are repeatedly and exclusively described using other terms besides "[P/p]remises" throughout the Lease. Specifically, the Lease uses the terms "property," "common areas," or "elsewhere in building" in referencing areas outside of Unit 601 in no fewer than 12 other Sections or

Rules/Regulations, demonstrating the parties' intent that, whether capitalized or not, the term "[P/p]remises" referred only to Unit 601.[1] This drafting also defeats Philadelphia's contention that our interpretation strains credulity because Renaissance would likely not agree to limit the scope of Gonzalez's liability to Unit 601. If the parties had intended for Gonzalez to be liable for negligent conduct in other areas besides Unit 601, they would have done so with lease terms making her liable for negligently causing damage to the "property," "common area," or "elsewhere in the building." The Lease does not do so.

¶ 31    Philadelphia also disputes our interpretation by referencing Section 10 of the Lease, which reads, in relevant part,

> "At the termination of this Lease and upon surrender of the Premises, all fixtures, appliances and personal property of Landlord shall be in the same condition as they were on the Beginning Date, normal wear and tear excepted. Landlord may at its sole option use all or part of the Security Deposit (if any) to repair and/or replace any damage to Landlord's property caused either directly by Tenant or by Tenant's negligence."

Philadelphia contends this term implies that Gonzalez can be liable for negligently caused damage to any of Renaissance's "property," including fire damage to units besides Unit 601. This suggested interpretation is counter to the plain meaning of the section, to which we must give effect. *Thompson*, 241 Ill. 2d at 441. The plain meaning of the provision is that the "property" in the second sentence is the "personal property" referenced in the first (*i.e.*, Gonzalez must return the personal property of the landlord contained in Unit 601 to the landlord in the condition she found it, absent wear and tear) and to the extent that personal property has damage beyond normal

---

[1]Specifically, Sections 2, 13, 14, 22, 23, 24, 29; and Rules and Regulations 1, 5, 7, 11, and 13.

wear and tear caused by Gonzalez's negligence, the landlord may use the security deposit to pay for that damage. To interpret this provision otherwise would be to improperly divorce the second sentence from any relation to the first. See *Village of Orland Hills v. Citizen Utilities Co. of Illinois*, 347 Ill. App. 3d 504 (2004) (clauses in a contract should be interpreted as having been inserted deliberately).

¶ 32    Philadelphia further argues that the circuit court found Gonzalez was not an implied coinsured of Renaissance's policy with Philadelphia, and, based on this finding, this court should conclude Gonzalez is excluded from the protection afforded to tenants, pursuant to *Dix* and its progeny. Instead, Philadelphia argues that this court should apply the "common law" of Illinois, as purportedly stated in *Fire Insurance Exchange v. Geekie*, 179 Ill. App. 3d 679, 682 (1989), and find Gonzalez liable due to the absence of an express clause to the contrary, as, "in the absence of an express agreement to the contrary, a tenant is liable for damages to the leased premises resulting from his failure to exercise due care."

¶ 33    This argument fails because even if we agreed with the circuit court that Gonzalez was not an implied coinsured pursuant to the Lease, it does not follow that this would make her liable for negligently caused fire damage outside of Unit 601. As explained in *Towne*, the implied coinsured concept is not outcome determinative; instead, where the lease imposes on the landlord the responsibility to maintain insurance (as the Lease does here), the broader policy of not holding tenants liable controls, absent an express provision to the contrary. *Towne*, 331 Ill. App. 3d at 540. This conclusion is not affected by Philadelphia's citation to *Geekie*, which cannot impact our interpretation of *Dix* and its progeny because it predates *Dix*.

¶ 34 Philadelphia also cites Gonzalez's alleged procurement of a $300,000 policy from State Farm as evidence of the parties' intent that she be liable for any damage caused by her own negligence, whether contained in Unit 601 or not. First, we find that the intent of the parties is clear from the language of the Lease; thus, it is inappropriate to consider any evidence beyond the written agreement. *Thompson*, 241 Ill. 2d at 441. Moreover, even if it were hypothetically appropriate to consider the parol evidence of the alleged State Farm policy in determining the parties' intent, we could not do so because the alleged State Farm policy is not included in the record on appeal, and we must construe its absence against Philadelphia. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

¶ 35 Philadelphia's final claim is that equitable principles dictate that it should have a right to recover on a subrogation claim against Gonzalez. This argument fails because Philadelphia cannot overcome a core tenet of the equitable remedy of subrogation—"a subrogee can have no greater right than the subrogor and can enforce only such rights as a subrogor could enforce." *Lobo IV, LLC v. V Land Chicago Canal, LLC*, 2019 IL App (1st) 170955, ¶ 118. Per the Lease (as explained above), Renaissance has no right to recover against Gonzalez for damages outside of Unit 601, and, therefore, neither does Philadelphia as subrogee to Renaissance's rights.

¶ 36                                    IV. CONCLUSION

¶ 37 Because the Lease shows the parties' intended Gonzalez not to be liable for damages outside of Unit 601, we affirm the circuit court's limitation on Philadelphia's recoverable damages.

¶ 38 Affirmed.

*Philadelphia Indemnity Insurance Co. v. Gonzalez*, **2024 IL App (1st) 230833**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-L-644; the Hon. James E. Snyder, Judge, presiding. |
| **Attorneys for Appellant:** | Matthew F. Policastro, of Cozen O'Connor, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Ellen J. O'Rourke, of Michael D. Gallo & Associates, of Chicago, for appellee. |